## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

PATAGONIA, INC.,

               Plaintiff,

     v.

JPC APPAREL LLC, a Florida limited
liability company; JULES P. CAPON, an
individual; LANCE KESSLER, an individual;
MANUFACTURERS' EXCHANGE, Inc., a
New York corporation; and HARVEY
SINGER, an individual,

               Defendants.

Civil Action No.:

**COMPLAINT FOR COUNTERFEITING,
TRADEMARK INFRINGEMENT,
UNFAIR COMPETITION, DILUTION
AND COPYRIGHT INFRINGEMENT**

**JURY TRIAL DEMAND**

## COMPLAINT

Plaintiff, Patagonia Inc. ("Patagonia" or "Plaintiff") brings this action against

Defendants, JPC Apparel LLC ("JPC Apparel"), Mr. Jules P. Capon ("Mr. Capon"), Mr. Lance

Kessler ("Mr. Kessler"), Manufacturers' Exchange Inc. ("M.E.") and Mr. Harvey Singer ("Mr.

Singer") (collectively referred to as "Defendants") to stop Defendants from counterfeiting,

infringing, and misusing Patagonia's trademarks. Defendants have manufactured, imported,

promoted, marketed, offered, and sold apparel products that bear counterfeit replicas of

Patagonia's famous trademarks and logos. To stop this conduct, Patagonia alleges as follows:

## PARTIES

1.     Patagonia is a California corporation headquartered at 259 West Santa Clara

Street, Ventura, California 93001. Patagonia has been designing, developing, and marketing

clothing for more than fifty years. Today, Patagonia and the PATAGONIA brand are famous

around the world for innovative apparel designs, quality products, and environmental and

corporate responsibility.

2.      Defendant JPC Apparel LLC, is a Florida limited liability company with its principal place of business at 8195 Sweetbriar Way, Boca Raton, Florida 33496. Patagonia is informed and believes JPC is a wholesaler of apparel products.

3.      Defendant Jules P. Capon is an individual who maintains an address at 8195 Sweetbriar Way, Boca Raton, Florida 33496. Mr. Capon is the manager and registered agent of JPC Apparel and controls all of JPC Apparel's relevant activities. JPC and Mr. Capon are collectively referred to as the "JPC Defendants"

4.      Defendant Lance Kessler is an individual who maintains an address at 1385 Broadway, Suite 1007, New York, New York 10018. Mr. Kessler is the President and CEO of M.E. and controls all of M.E.'s relevant activities. Mr. Kessler is a broker and sales representative for the JPC Defendants.

5.      Defendant Manufacturers' Exchange, Inc. is a New York corporation with its principal place of business at 1385 Broadway, Suite 1007, New York, New York 10018.

6.      Defendant Harvey Singer is an individual who maintains an address at 214 W. 39th Street, New York, New York 10018. Mr. Singer is a sales representative for the JPC Defendants. Mr. Singer, Mr. Kessler, and M.E. are collectively referred to as the "Sales Representative Defendants."

## JURISDICTION AND VENUE

7.      This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and

unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15

U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in

violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common

law claims, arising from the infringement of Plaintiff's trademarks. This Court has jurisdiction

over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair

competition), 17 U.S.C. § 501 (copyright), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. §

1121 (Lanham Act). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a),

as the claims asserted thereunder are so closely related to the federal claims brought in this action

as to form part of the same case or controversy.

8.      This Court has personal jurisdiction over the JPC Defendants because JPC

Apparel is a company formed under the laws of Florida and has its principal place of business

in Florida.

9.      This Court has personal jurisdiction over the Sales Representative Defendants

because they knowingly made representations and sold counterfeit products through the JPC

Defendants—who maintain their principal place of business in this district—for the Sales

Representative Defendants' benefit to retailers.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(a) because the

JPC Defendants reside in this district, Defendants infringed Patagonia's intellectual property in

this district, and a substantial part of the events giving rise to the claims asserted arose in this

district.


### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS
**Patagonia's History**

11.     Patagonia was founded in the early 1970s to design and sell climbing clothes

and other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate

a related business that designed and manufactured climbing gear and tools.  PATAGONIA was

chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords,

jagged windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand

has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt.

Fitz Roy skyline (the "P-6 logo").

    12.    In the more than fifty years since Patagonia's business started, the

PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the

world.  Patagonia's products now include a wide range of apparel products and equipment,

including T-shirts, hoodies, sweatshirts, and fleece, as well as technical products designed for

climbing, skiing and snowboarding, surfing, fly fishing, and trail running, which are sold

around the world.

    13.    Over the years, Patagonia has been recognized and honored for its business

initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement

Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic

fertilizers used in conventional cotton growing, Patagonia began the exclusive use of

organically grown cotton and has continued that use for more than twenty years.  It was a

founding member of the Fair Labor Association®, which is an independent multi-stakeholder

verification and training organization that audits apparel factories.  Additionally, since 1985

Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural

environment, donating more than $140 million to date.  In 2002, Patagonia's founder, Yvon

Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage

other businesses to do the same.  Today, more than 1,200 member companies donate to more

than 3,300 nonprofits through 1% For the Planet.  In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment.  In 2022, Patagonia's owners donated their holdings in the company to a Purpose Trust and nonprofits dedicated to fighting the environmental crisis and defending nature.

**Patagonia's Trademarks**

14.     Patagonia owns numerous registrations for its distinctive P-6 logos and PATAGONIA trademarks, covering a wide-ranging assortment of products.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear | 08/1974 |
|  | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
|  | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | 08/1974-1981 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| **PATAGONIA** | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| **PATAGONIA** | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues | 10/1995 |
| **PATAGONIA** | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| **PATAGONIA** | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers | 09/2014 |
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |
|  | 4500490 / March 15, 2014 | Shirts, pants, shorts. | 01/2012 |
| | 4773290 / July 14, 2015 | Backpacks; luggage, namely, duffel bags, sling bags, hip packs, waist bags, and daypacks; Water-repellent and waterproof fishing | 01/2014 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  | | packs in the nature of packs that are specially adapted for fishing equipment, namely, backpacks, daypacks, duffel bags, sling bags, hip packs, waist bags, and gear bags in the nature of fishing reel bags, fishing tackle bags, and sportsman's fishing bags in nature of duffel bags. | |

15.     These registrations for the PATAGONIA mark and logos are in full force and effect.  The registrations have become incontestable under 15 U.S.C. § 1065.  A color image of the P-6 logo follows:

![patagonia logo]

16.     Patagonia also owns registered and common law rights for its well-known WORN WEAR mark and below design mark (collectively, the "WORN WEAR" Marks") for retail services, along with individual apparel products (and other related goods) and its repair and trade-in programs.  *See* https://wornwear.patagonia.com/.  Among these are the following U.S. trademark registrations and applications:

| Trademark | Reg./App. No. / Reg./App. Date | Classes/Goods | Date of First Use |
|---|---|---|---|
| **WORN WEAR** | Reg. No. 4955520 / May 10, 2016 | 035 Retail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories | Oct. 07, 2012 |

| Trademark | Reg./App. No. / Reg./App. Date | Classes/Goods | Date of First Use |
|---|---|---|---|
|  | Reg. No. 4623527 / Oct. 21, 2014 | 035 Retail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories | Oct. 07, 2012 |
| **WORN WEAR** | App. No. 97380428 / Apr. 25, 2022 | 018 Backpacks; All-purpose carrying bags; Duffle bags; Messenger bags; Travel bags<br><br>025 Clothing, namely, tops, bottoms, shirts, jackets, coats, parkas, vests, pullovers, sweaters, sweatshirts, hooded sweatshirts, dresses, skirts, pants, jeans, shorts, board shorts | Sep. 01, 2017 / Oct. 07, 2012 |
|  | App. No. 97387380 / Apr. 28, 2022 | 018 Backpacks; All-purpose carrying bags; Duffle bags; Messenger bags; Travel bags<br><br>025 Clothing, namely, tops, bottoms, shirts, jackets, coats, parkas, vests, pullovers, sweaters, sweatshirts, hooded sweatshirts, dresses, skirts, pants, jeans, shorts, board shorts | Sep. 01, 2017 / Oct. 07, 2012 |

17.     The registrations for the WORN WEAR Marks are in full force and effect.  The registrations have become incontestable under 15 U.S.C. § 1065.

18.     Collectively, these marks, Patagonia's other registered trademarks, and its common law marks are referred to as the "PATAGONIA trademarks."  Patagonia also owns registered copyrights for the P-6 logo and P-6 Trout logo (Registration Nos. VA 1-801-788 and VA 2-322-548).

19.     The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered worldwide.

20.     For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and promoting the products on which its PATAGONIA trademarks are used. PATAGONIA brand products are advertised in a variety of contexts and media, including in print and on the Internet.  In addition to advertising by Patagonia, the PATAGONIA trademarks are also advertised and promoted and presented at point of sale by numerous retailers. Consumers, accordingly, are exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

21.     Patagonia has sold its PATAGONIA brand products all over the world, including throughout the United States, Florida.  Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices, Patagonia has acquired enormous goodwill in its PATAGONIA trademarks.  The PATAGONIA trademarks are famous within the meaning of the Trademark Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying high-quality products made by a responsible company.

**Defendant's Promotion and Sale of Counterfeit Products**

22.     In blatant disregard of Patagonia's rights in the PATAGONIA trademarks – and without authorization from Patagonia – Defendants have promoted, offered for sale, and sold counterfeit Patagonia products, including jackets, bearing one or more reproductions of Patagonia's federally registered marks (the "Counterfeit Products").

23.     Examples of the Counterfeit Products are below.













 

24.     Patagonia's investigation confirmed that the interior and exterior Patagonia labels on the Counterfeit Products have been defaced with black marker, as shown in the images above.. Consumers have posted videos of these Counterfeit Products being sold at Hamrick's ( "Retailer") retail locations, noting the blacked-out labels and the poor quality of the jackets.

25.     Patagonia is informed and believes Defendants Mr. Singer , Mr. Kessler and M.E. work with  the JPC Defendants to manufacture, import, export, ship, store, advertise, market, promote, distribute, display, offer for sale and/or sell Counterfeit Products, including their sale of  approximately thousands of the Counterfeit Products to Retailer.

26.     Based on information gathered through Patagonia's investigation, Patagonia is informed and believes that Mr. Kessler approached Retailer on behalf of the JPC Defendants to offer for sale the Counterfeit Products. Mr. Kessler made representations to Retailer regarding

the Counterfeit Products and, Mr. Kessler, Mr. Kessler's company (M.E.), and Mr. Singer,

worked together to sell the Counterfeit Products to Retailer on behalf of the JPC Defendants,

with knowledge of the counterfeit nature of the Counterfeit Products. Mr. Singer and Mr.

Kessler, acting as sales representatives for the JPC Defendants, intentionally established and

maintained a commercial relationship with Retailer for their own benefit and for the purpose of

marketing and selling the Counterfeit Products.

27.     Retailer offered for sale and sold the Counterfeit Products through retail stores

in multiple states.

28.     Retailer displayed for sale and promoted the Counterfeit Products as  "Famous

Maker Insulated Jackets" as illustrated in the image below. Examples of the displays at one of

Retailer's locations are below.





29.      Based on the Counterfeit Products themselves Defendants' representations about those Counterfeit Products, and the terms of Defendants' sale and distribution of thousands of units of the Counterfeit Products, Defendants engaged in the conduct described in this Complaint with knowledge of Patagonia's rights in the PATAGONIA trademarks, rendering such conduct knowing, willful, intentional, and/or malicious.

30.      The Counterfeit Products that are manufactured, distributed, imported, offered for sale, and sold by or at the direction of Defendants have not been licensed, authorized, sponsored, endorsed, or approved by Patagonia.  Defendants are not associated, affiliated, or connected with Patagonia, or licensed, authorized, sponsored, endorsed, or approved by Patagonia in any way.

31.      The Counterfeit Products are visually identical to and compete with goods sold

by Patagonia, and the parties' respective goods are sold through similar and overlapping channels of trade.   The Counterfeit Products, however, are of a vastly inferior quality to Patagonia's genuine apparel products, causing further harm to Patagonia, its reputation and goodwill, and the PATAGONIA trademarks.

32.     Defendants' copying of Patagonia's copyrighted P-6 logo and P-6 Trout logo violates Patagonia's rights in the designs and has caused damage to Patagonia.

33.     Defendants' wholesale copying of Patagonia's trademarks is likely to deceive, confuse, and mislead actual and prospective consumers regarding the source of the Counterfeit Products, including whether the Counterfeit Products are genuine Patagonia products, and/or whether Patagonia has sponsored, authorized, or is somehow affiliated with Defendants. Such consumers are likely to be deceived, confused, and misled before, during and after purchase.  Patagonia, consequently, has no alternative but to protect its goodwill and famous trademarks by obtaining an injunction against Defendants' further promotion, distribution, offer, and sale of the Counterfeit Products.

34.     Patagonia is informed and believes that Defendants have sourced, marketed, and sold substantial quantities of the Counterfeit Products, and have obtained and continues to profit from such sales.

35.      Defendants' actions have caused and will cause Patagonia irreparable harm for which money damages and other remedies are inadequate.  Unless Defendants are restrained by this Court, Defendants will continue expanding its illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

a.     Depriving Patagonia of its statutory rights to use and control use of its trademarks;

b.      Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the Counterfeit Products;

c.      Causing the public falsely to associate Patagonia with Defendants and/or their products;

d.      Causing the public falsely to believe Patagonia has collaborated with Defendants, entered a co-branding relationship with Defendants, or is otherwise associated with Defendants and/or their products;

e.      Causing incalculable and irreparable damage to Patagonia's goodwill and diluting the capacity of its famous PATAGONIA trademarks to differentiate its products from those of its competitors;

f.      Causing incalculable and irreparable damage to Patagonia's licensing and collaboration programs, and to Patagonia's ability to control its brand partnerships and to associate itself with entities who are specifically aligned to Patagonia's company mission; and

g.      Causing Patagonia to lose sales of its genuine PATAGONIA products.

36.      Accordingly, in addition to other relief, Patagonia is entitled to injunctive relief against Defendants.

## **FIRST CLAIM**

## **FEDERAL TRADEMARK COUNTERFEITING**

### **(15 U.S.C. §§ 1114-1117)**

37.      Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

38.      Defendants have used in commerce marks that are identical to, or substantially

indistinguishable from, the federally registered PATAGONIA trademarks, in connection with goods falling within the scope of Plaintiffs' federal registrations.

39.     Defendants' actions demonstrate an intentional, willful, and malicious intent to counterfeit the federally registered PATAGONIA trademarks in violation of 15 U.S.C. § 1116(d).

40.     Upon information and belief, JPC Apparel's and M.E.'s acts were done with full knowledge of Mr. Capon, Mr. Kessler and Mr. Singer, who directed and controlled such acts.

41.     Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Patagonia for which Patagonia has no adequate remedy at law; because this is an exceptional case; and as a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover Defendants' unlawful profits and Patagonia's damages, and treble the amount of its damages and Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a); or statutory damages and reasonable attorneys' fees under 15 U.S.C. § 1117(c), as well as seizure of the counterfeit goods and labels, documents, and proceeds related to the scheme under 15 U.S.C. § 1116.

42.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## SECOND CLAIM

## FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §§ 1114-1117)

43.     Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

44.     Defendants have used, in connection with the sale, offering for sale, distribution, or advertising of their Counterfeit Products, words and symbols that infringe upon Patagonia's PATAGONIA trademarks.

45.     These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

46.     Upon information and belief, JPC Apparel's and M.E.'s acts were done with full knowledge of Mr. Capon, Mr. Kessler and Mr. Singer, who directed and controlled such acts.

47.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover Defendants' unlawful profits and Patagonia's damages, and treble the amount of its damages and Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

48.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## THIRD CLAIM

## FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description – 15 U.S.C. § 1125(a))

49.     Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

50.     Defendants' conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the Counterfeit Products, within the meaning of 15 U.S.C. § 1125(a)(1). Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the Counterfeit Products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

51.     Upon information and belief, JPC Apparel's and M.E.'s acts were done with full knowledge of Mr. Capon, Mr. Kessler and Mr. Singer, who directed and controlled such acts.

52.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

53.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## FOURTH CLAIM

## FEDERAL DILUTION OF FAMOUS MARK

## (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

54.     Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

55.     Patagonia's PATAGONIA trademarks (including the P-6 logo) are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were famous prior to Defendants' adoption of the Counterfeit Products.

56.     Defendants' conduct is likely to cause dilution of Patagonia's PATAGONIA trademarks by diminishing its distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

57.     Upon information and belief, JPC Apparel's and M.E.'s acts were done with full knowledge of Mr. Capon, Mr. Kessler and Mr. Singer, who directed and controlled such acts.

58.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages,

and an award of attorney's fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).

59.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## FIFTH CLAIM

## FEDERAL COPYRIGHT INFRINGEMENT

### (17 U.S.C. §§ 101, *et seq.*, and 17 U.S.C. §§ 501, *et seq.*)

60.     Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

61.     Patagonia owns the copyrights in its P-6 logo and P-6 Trout logo, which are federally registered and were registered prior to Defendant's copying.

62.     Defendants have copied, advertised, offered for sale, and/or sold substantially similar copies of the P-6 logo and P-6 Trout logo without Patagonia's authorization or permission and in violation of Patagonia's exclusive rights in its copyrights.

63.     Defendants' unlawful reproduction, advertisement, distribution, and/or sale of Patagonia's proprietary designs constitutes copyright infringement.  Patagonia alleges that Defendants acted intentionally and in bad faith when they reproduced Patagonia's copyrighted works (in identical or substantially similar forms), and advertised, distributed, displayed, and/or sold the Counterfeit Products.

64.     Defendants' infringement alleged in this complaint has caused and, if not enjoined, will continue to cause Patagonia to suffer irreparable harm for which there is no adequate remedy at law, and has also caused damage to Patagonia in an amount which cannot be accurately computed at this time but will be proven at trial.

65.     Upon information and belief, JPC Apparel's and M.E.'s acts were done with full knowledge of Mr. Capon, Mr. Kessler and Mr. Singer, who directed and controlled such acts.

66.     As a direct and proximate result of Defendants' conduct, Patagonia is entitled to injunctive relief, as well as actual damages and any profits earned by Defendants as a result of its infringements, or statutory damages of up to $150,000 for each work infringed, at Patagonia's election, pursuant to 17 U.S.C. § 504.

## SIXTH CLAIM

## TRADEMARK INFRINGEMENT

### (Florida Trademark Dilution and Injury to Business Reputation)

67.     Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

68.     Patagonia is the owner of the PATAGONIA trademarks.

69.     Patagonia has extensively and continuously promoted and used the PATAGONIA trademarks in the United States, including Florida, and around the world, and the PATAGONIA trademarks have become distinctive, famous and well-known symbols of Patagonia.

70.     Defendants have used, in connection with the sale, offering for sale, distribution, or advertising of their Counterfeit Products, words and symbols that infringe upon Patagonia's PATAGONIA trademarks.

71.     Defendants' unauthorized use of the registered PATAGONIA trademarks dilutes and is likely to dilute the distinctiveness of the PATAGONIA trademarks by eroding the public's exclusive identification of these famous and well-known marks with Patagonia, and tarnishing and degrading the positive associations and prestigious connotations of said marks.

72.     Defendants are causing and will continue to cause irreparable injury to Patagonia's goodwill and business reputation, and dilation of the distinctiveness and value of the famous and distinctive PATAGONIA trademarks in violation of Florida law, Fla. Stat. § 495.151.

73.      Upon information and belief, JPC Apparel's and M.E.'s acts were done with full knowledge of Mr. Capon, Mr. Kessler and Mr. Singer, who directed and controlled such acts.

74.     As a direct and proximate result of Defendants' conduct, Patagonia is therefore entitled to injunctive relief, damages and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## <u>PRAYER FOR JUDGMENT</u>

WHEREFORE, Patagonia prays that this Court grant it the following relief:

1.     Adjudge that Defendants have promoted, distributed, offered and sold products bearing counterfeit reproductions of Patagonia's federally registered trademarks;

2.     Adjudge that Defendants have infringed the PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1114;

3.     Adjudge that Defendants have infringed Patagonia's common law rights in the PATAGONIA trademarks;

4.     Adjudge that Defendants have competed unfairly with Patagonia in violation of Patagonia's rights under 15 U.S.C. § 1125(a);

5.     Adjudge that Defendants have infringed and diluted the PATAGONIA trademarks violation of Florida statutory law;

6.     Adjudge that Defendants' activities are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c);

7.     Adjudge that Defendants have infringed Patagonia's copyright rights in its P-6 design and P-6 Trout design;

8.     Adjudge that Defendants' actions, as outlined in the preceding paragraphs, have been willful, intentional, and conducted in reckless disregard of the possible injurious consequences;

9.     Adjudge that Defendants and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.     Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that bear reproductions or so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia, including, without limitation, any product or service that bears the Counterfeit Products, or any other approximation of Patagonia's trademarks;

b.     Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia;

c.     Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendants or their products with Patagonia, or as to the origin of Defendants' goods, or any false designation of origin, false or misleading description or representation of fact, or any false

or misleading advertising, or likely dilution of the PATAGONIA trademarks;

        d.     Further infringing the rights of Patagonia in and to its PATAGONIA trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

        e.     Further diluting the famous PATAGONIA trademarks;

        f.     Otherwise competing unfairly with Patagonia in any manner;

        g.     Further infringing Patagonia's copyright rights in its P-6 logo design, including by reproducing, distributing, or displaying such logo or any other logo or design that is substantially similar to the P-6 logo; and

        h.     Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

10.     Adjudge that Defendants are prohibited from applying to register any trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of, Patagonia's PATAGONIA trademarks;

11.     Adjudge that Defendants be required immediately to deliver to Patagonia's counsel its entire inventory of counterfeit and infringing products, including without limitation, patches and any other products, packaging, labeling, advertising and promotional material, and all plates, patterns, molds, matrices, files, data, and other material for producing or printing such items, that are in their possession or subject to their control and that infringe Patagonia's trademarks as alleged in this Complaint;

12.     Adjudge that Defendants, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

13.     Adjudge that Patagonia recover from Defendants its damages and lost profits, and Defendants' profits in an amount to be proven at trial;

14.     Adjudge that Patagonia is entitled to recover statutory damages from Defendants based on Defendants' willful counterfeiting;

15.     Adjudge that Defendant be required to account for any profits that are attributable to its illegal acts, and that Patagonia be awarded (1) Defendants' profits and (2) all damages sustained by Patagonia, under 15 U.S.C. § 1117, plus prejudgment interest;

16.     Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall be trebled;

17.     Adjudge that Patagonia recover from Defendants its damages based on Defendants' copyright infringement, or statutory damages at Patagonia's election;

18.     Adjudge that Patagonia recover punitive or exemplary damages from Defendants based on Defendants' conduct done willfully, intentionally, and in reckless disregard of their possible injurious consequences;

19.     Order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of its infringing, dilutive activities;

20.     Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

21.     Adjudge that all such other relief be awarded to Patagonia as this Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.

Dated December 22, 2025                    Respectfully submitted,

*Of Counsel*:                              /s/*Jaime Rich Vining*
                                           David K. Friedland (FL Bar No. 833479)
Gregory S. Gilchrist (*pro hac vice* to be filed)    Jaime Rich Vining (FL Bar No. 30932)
Ryan Bricker (*pro hac vice* to be filed)            FRIEDLAND VINING, P.A.
Kourtney Speer (*pro hac vice* to be filed)          6619 South Dixie Highway, Box 157
VERSO LAW GROUP LLP                        Miami, FL 33143
565 Commercial Street, 4th Fl.             Tel: (305) 777-1721
San Francisco, California 941111           Fax: (305) 456-4922
Tel: (415) 534-0495